## AFFIDAVIT

I, Dennis Smith, a detective with the Pawtucket Police Narcotics Division and a Task Force Officer assigned with the Providence Field Office of the Bureau of Alcohol, Tobacco, Firearms & Explosives, being duly sworn, depose and state the following:

1.　　　I am a detective with the Pawtucket Police Department and have been so employed for 25 years.  During my tenure as a law enforcement officer, I have participated in investigations that include the illegal distribution of controlled substances and crimes of violence perpetrated in furtherance of organized criminal activity.  In addition, I have coordinated controlled purchases of illegal drugs utilizing confidential sources, cooperating witnesses, and undercover police officers.  I have written, obtained and coordinated the execution of search and arrest warrants pertaining to the individuals involved in the distribution of illegal drugs.  I have conducted electronic as well as physical surveillance of individuals involved in illegal drug distribution.  I have also analyzed records documenting the purchase and sale of illegal drugs, provided testimony in both Grand Jury and District Court proceedings, and spoken with informants and subjects, as well as other local, state and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs.  I have participated in this investigation and, as a result, I am familiar with the information contained herein.

2.　　　This affidavit is submitted in support of

    a.　　　a criminal complaint and arrest warrant against Estefano Lobo ("Lobo"), who was born in January 1992, charging possession with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B);

    b.　　　a warrant to search one Samsung smartphone housed in a black and blue protective case and seized from Wilson Baptista on March 16, 2022 and extract from that smartphone electronically stored information described in Attachment A.

1

    c.      a warrant to search a black and blue Motorola smartphone and a black iPhone housed in a brown case, both seized from Estefano Lobo on March 16, 2022 and extract from those smartphones electronically stored information described in Attachment A.

3.      The information set forth in this affidavit is based on my investigation, my training and experience, and information relayed to me by other law enforcement officers.  This affidavit is intended to show that there is probable cause and does not set forth all of my knowledge about this matter or investigation.

4.      As set forth below, there is probable cause to believe – based on statements from one of Lobo's customers, a search of Lobo's bedroom, and Lobo's admissions – that Lobo possessed for distribution more than 40 grams of a substance that he knew to be an illicit drug and that contained fentanyl, and that evidence of his drug trafficking will be found in electronically stored information on the smartphone seized from Baptista and on the smartphones seized from Lobo.

*Investigation*

5.      On March 16, 2022 at approximately 8 am, Pawtucket police officers saw Estefano Lobo drive a Jeep from 422 Smithfield Avenue to a location a few blocks away along Francis Avenue.  Lobo parked his Jeep in front of a large box truck, and shortly thereafter a male, who was later identified as Wilson Baptista ("Baptista"), stepped out of the truck and entered Lobo's Jeep on the front passenger side.  Lobo and Baptista remained in the Jeep for approximately one minute, and during that time, officers saw interaction between Lobo and Baptista that was consistent with a hand-to-hand drug transaction.  After the transaction, Baptista returned to the box truck and drove away.  Officers followed him and performed a vehicle stop.  During the course of the stop, officers searched Baptista.  On Baptista's person, officers found a plastic bag containing a white rock-like substance that later field tested positive for the presence of cocaine.[1]

---

[1] The test kits used here do not distinguish cocaine powder from cocaine base.  Items are identified as cocaine base because of appearance or texture and field test results.

The officers noted that the appearance of the substance was consistent with cocaine base.  Baptista provided the officers his smartphone, which was a Samsung smartphone in a black and blue protective case.

6.      After being advised of his *Miranda* rights, Baptista told officers that he had earlier telephoned 401-742-3573 to make arrangements to purchase cocaine base from a seller.  Baptista explained that he met the seller just earlier and purchased cocaine base from him inside a Jeep and that that cocaine base was the material in the plastic bag that police had just seized.  Baptista said that inside the Jeep he had paid the seller $40 for the cocaine base.

7.      I showed Baptista a photograph of Estefano Lobo, and Baptista positively identified Lobo as the seller, the person who Baptista had called to arrange the purchase of cocaine base and who had sold Baptista cocaine base that day inside the Jeep.

8.      Baptista provided officers his Samsung smartphone, which was housed in a black and blue protective case.  In discussion with officers, although he did not consent to a search of his smartphone, Baptista showed them a call log on the smartphone that indicated the smartphone had been used prior to 8 am that day to telephone 401-742-3573.  Officers seized the smartphone.

9.      At approximately 10:40 am on March 16, 2022, Pawtucket police officers encountered Lobo outside a restaurant in Pawtucket and arrested him for distribution of cocaine base to Baptista.  At the time of arrest, Lobo had just stepped out of the Jeep that he had earlier been seen driving to meet Baptista.   Officers seized from Lobo's person a black and blue Motorola smartphone, a black iPhone in a brown case, a set of house keys, $580 in U.S. currency, and an electronic key fob bearing a Jeep logo.  Officers saw in the Jeep on the interior handle of the driver's door a clear plastic baggie containing a white rock-like substance consistent in appearance with cocaine base.  Later field testing indicated the presence of cocaine in the substance.  Baptista was

transported to the Pawtucket Police's central station.

10.     At 11:22 am on March 16, 2022, based on information provided by Baptista and other information obtained through investigation, Pawtucket police officers obtained a state search warrant to search Apartment 3 at 422 Smithfield Avenue. Investigation had revealed that Lobo's sister was associated with Apartment 3 in the building at 422 Smithfield, and in earlier surveillance Lobo had been seen coming and going from the building at 422 Smithfield.

11.     Shortly prior to noon on March 16, 2022, officers executed the warrant to search Apartment 3 at 422 Smithfield Avenue.  Officers opened the door to Apartment 3 using the keys seized from Lobo.  The apartment contained two bedrooms.  One of those two bedroom's contained papers and articles bearing Lobo's name, including a debit card, a Medicaid card, and bank papers.  In that bedroom officers found a large plastic bag containing chunks of white material consistent in appearance with pressed powder cocaine.  The bag and the material inside weighed 101.8 grams, and based on my observation of the bag, I estimate it could not weigh more than 10 grams.  Fielding testing of the material indicated the presence of both cocaine and fentanyl, which is chemically known at N-phenyl-N-(1-(2-phentylethyl)-4-piperidinyl] propenamide.  In that bedroom was a smaller plastic bag containing a yellow-white substance consistent in appearance with cocaine base.  Later field testing of the material indicated the presence of cocaine and fentanyl.  The weight of the bag and material was 22.1 grams, and I estimate, based on my observation of the bag, that this smaller bag could not weigh more than 5 grams.  In that bedroom, officers found narcotics packaging materials (namely baggie corners, which in my training and experience, are used to package narcotics for street-level distribution), an operating digital scale bearing white powder residue, two boxes of sandwich bags, Pyrex glass containers bearing white powder residue, and $652 in U.S. currency.

12.     After the search of the apartment, I returned to the central station and *Mirandized* and then questioned Lobo.  Lobo verbally acknowledge that he understood his rights and proceeded to answer the questions I posed.  My interaction with Lobo was audio and video recorded.  He said that he buys cocaine in powder form and "cooks" it up for re-sale and specified that he had just recently purchased 100 grams of powder for his distribution activities.  He specified that he "cooks" the powder into cocaine base using Pyrex glass wear that he stores in his bedroom.  Lobo specified that he though he was selling cocaine and did not know about the presence of fentanyl. Lobo said that he has been selling drugs for the past several months.

*Search of Smartphones*

13.     I know from my training and experience that (1) smartphones commonly generate, contain, and maintain electronic records such as call records, records of text message communication, and geolocation records, (2) that smartphones commonly contain electronic records of calls to and from the telephone, text messages to and from the telephone, electronic mail to and from the telephone, communications to and from the telephone utilizing applications such as Facebook, and geographic location information about the telephone at the time of such communications, and (3) that text messaging and other applications such as Facebook can facilitate illegal activity, such as narcotics distribution.

14.     *Forensic evidence.*  As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the smartphone device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the device because:

15.     Data on the storage medium can provide evidence of a file that was once

on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

16.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

17.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

18.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

19.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20.     *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

21.     *Manner of search warrant execution*. Because these search warrants seek

only permission to examine a device already in law enforcement's possession, execution does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

<em>Probable Cause to Search</em>

22.     Based on the above, there is probable cause to believe that Lobo possessed in excess of 40 grams of a substance containing fentanyl and other controlled substances for the purpose of distribution.

23.     Based on the information above, including Baptista's statements and the items he showed officers on his smartphone, there is probable cause to believe that Baptista used his smartphone to communicate with Lobo about acquiring narcotics. Based on the same information, including Lobo's own statements, there is probable cause to believe that Lobo used one or both of his smartphones to communicate with others about distributing narcotics.

*Conclusion*

24.     Based on the foregoing, I believe that there is probable cause to believe
that Lobo possessed in excess of 40 grams of fentanyl for distribution in violation of 21
U.S.C. § 841(a)(1) and (b)(1)(B) and that evidence of his crime will be found on
Baptista's smartphone and on Lobo's smartphones.


_____
Dennis Smith
ATF Taskforce Officer and
Pawtucket Police Department Detective


| Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by . _____ *(specify reliable electronic means)* |
|---|

_____            _____
*Date*                                          *Judge's signature*

_____            _____
*City and State*                            *Printed name and title*

8 of 8

ATTACHMENT A

1.      All records on the Baptista smartphone and/or Lobo smartphones that relate to violations of 21 U.S.C. § 841(a)(1) and involve Estefano Lobo since July 2021, including:

  a. lists of customers and related identifying information; photographs of drugs or distribution related activities;

  b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

  c. any information related to sources or sale of drugs (including names, addresses, phone numbers, or any other identifying information);

  d. any information recording Lobo's schedule or travel from July 2021 to the present;

  e. all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the smartphones at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.